IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DONALD A. KING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL CASE NO.: 2:20-cv-120-ECM |
| ) | (WO) |
| SOUTHERN POVERTY LAW ) | |
| CENTER, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I.      INTRODUCTION**

Each year, the Defendant Southern Poverty Law Center ("SPLC") publishes several reports. One, the Intelligence Report, names "hate groups" that SPLC has identified. A second, the Hate Map, presents the information from the Intelligence Report in a visual format, making clear how many "hate groups" SPLC believes operates in each U.S. state.

In 2018, the Intelligence Report and Hate Map identified—for the first time—the Plaintiff The Dustin Inman Society, Inc. ("DIS") as an "anti-immigrant hate group." The 2019 and 2020 reports did the same. As justification for its designation, SPLC listed (among other things) myriad statements made by DIS's founder, Defendant Donald A. King ("King"), which SPLC believed disparaging to all immigrants. King and DIS jointly sued in state court, accusing SPLC of defamation.

SPLC subsequently removed the case to this Court and moved to dismiss, arguing that the Plaintiffs failed to state a claim because any designation it assigns is unactionable opinion, or, in the alternative, because the Plaintiffs failed to adequately plead that SPLC published the statements with "actual malice."  Because the Court agrees that the Plaintiffs failed to adequately plead that SPLC acted with actual malice, SPLC's motion is due to be GRANTED.

## II.     JURISDICTION

The Court here exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332: the parties are completely diverse and the amount in controversy exceeds the statutory requirement of $75,000.  Personal jurisdiction and venue are uncontested.

## III.    BACKGROUND

In 2005, King (a resident of Georgia) chartered DIS, a nonprofit organization in Georgia "dedicated to promot[ing] the enforcement of immigration laws in the United States." (Doc. 3, para. 11).  Since then, King has been the organization's face, lobbying for immigration enforcement bills on its behalf before the Georgia State Legislature and the U.S. House of Representatives, as well as giving speeches and writing articles advocating for the enforcement of immigration laws.

SPLC, a nonprofit in Alabama, identifies and monitors organizations it deems "hate groups."  To that effect, SPLC publishes an annual "Intelligence Report" and "Hate Map" each spring, opining on the "hate groups" it has identified.  SPLC defines a hate group as a group that has "beliefs or practices that attack or malign an entire class of people,

typically for their immutable characteristics." (Doc. 10-4 at 2).[1]  SPLC also parses hate groups more granularly, classifying them by what it is the group seems to hate or by what motivates it.  Of relevance here, SPLC identifies *anti-immigrant* hate groups, which it defines as a hate group that is

> the most extreme of the hundreds of nativist groups that have proliferated since the late 1990s, when anti-immigration xenophobia began to rise to levels not seen in the United States since the 1920s. Most white hate groups are also anti-immigrant, but anti-immigrant hate groups target only that [population,] usually arguing that immigrants are unable to assimilate, have a lower intellectual capacity than white people, bring disease or are inherently more criminal. Although many groups legitimately criticize American immigration policies, anti-immigrant hate groups go much further by pushing racist propaganda and ideas about non-white immigrants.

(Doc. 3, para. 18).

Separate from its work in preparing Intelligence Reports and Hate Maps, SPLC also registered its own lobbyists in Georgia in March, 2018, to begin work against a pro-immigration enforcement bill.  Shortly thereafter, SPLC issued its 2018 Intelligence Report and Hate Map, identifying DIS, who supports pro-immigration enforcement bills, as an "anti-immigrant hate group."  SPLC also stated that DIS "poses as an organization

---

[1] Generally, when ruling on motions to dismiss, courts limit their review to the complaint.  However, courts may review documents incorporated by reference into the complaint without converting the motion to dismiss to one for summary judgment if (1) the document's contents are alleged in the complaint; (2) no party contests those contents; (3) the contents are central to the plaintiff's claims; and (4) the authenticity of the document is not challenged.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citations omitted).  The Plaintiffs, in their complaint, allege that the SPLC defamed them in its Intelligence Report and Hate Map, but they do not attach either to their complaint.  SPLC instead attached the relevant parts of the reports to its motion to dismiss. (*See* Docs. 10-1–10-7).  Because the contents of the reports are alleged in the complaint and form the basis of the Plaintiffs' claims, and are not challenged on authenticity or content by either party, the Court properly considers the contents of the reports in ruling on the SPLC's motion to dismiss.

concerned about immigration issues, yet focuses on vilifying all immigrants." (*Id.*, para. 25). SPLC's next two reports made the same accusations.[2]

DIS and King did not take kindly to SPLC's designation. After a demanded retraction from King and DIS went unanswered, the Plaintiffs filed suit in the Circuit Court of Montgomery County, Alabama, which SPLC then removed to this Court.[3] The Plaintiffs responded with an amended complaint, and SPLC moved to dismiss a few weeks later. The Court turns now to SPLC's motion.

## IV.   DISCUSSION

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all facts alleged in the complaint as true and "construe them in the light most

---

[2] It is not entirely clear which Hate Maps, or how many, identified DIS as a hate group. Paragraph 30 of the complaint indicates that the 2019 Hate Map, published in March 2020, did so. Paragraph 32 suggests that a Hate Map from February 2019 (which, using the same dating scheme from paragraph 30, would be the 2018 Hate Map) did the same. Paragraphs 37 and 45 list three Hate Maps (from March 2018, 2019, and 2020), while Paragraph 40 lists only two (from March 2019 and 2020). Likely, the Plaintiffs mean to allege that three Hate Maps, published just after the Intelligence Reports in March 2018, 2019, and 2020, identified DIS as a hate group and thus defamed them both.

[3] It is unclear whether SPLC's removal was proper. Section 1441(b)(2) imposes what is known as the forum defendant rule, in which an action filed in state court and removed solely based on diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). SPLC is a citizen of Alabama, and so by normal operation of that rule, would be barred from removing a case to Alabama federal court based on diversity jurisdiction. However, using a move that is becoming increasingly common, SPLC removed *prior to service*, (*see* doc. 1, para. 7), a procedure known as "snap removal" that *might* comply with the text of the statute since SPLC had not yet been "properly joined and served." The Eleventh Circuit has not yet offered guidance on whether snap removal is proper, and courts have taken a variety of stances on an equally varied number of rationales. *See, e.g.*, *Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286 (N.D. Ala. 2019) (finding snap removal prior to service of any defendant improper); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) (permitting snap removal by an in-state defendant prior to service). Nevertheless, the Court need not decide that issue here. The Eleventh Circuit has held that the forum defendant rule is a procedural rule, not a jurisdictional one. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1372 n.4 (11th Cir. 1998). Thus, by not objecting to this (potential) procedural defect within thirty days and instead filing an amended complaint, the Plaintiffs have waived their right to object per 28 U.S.C. § 1447(c) and have instead consented to the suit proceeding in this Court.

favorable to [the plaintiff]." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012) (citation omitted).  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court must take factual assertions as true, it does not have to take as true legal conclusions that lack further factual support. *Id.*  Nor is it required to take as true "legal conclusion[s] couched as . . . factual allegation." *Id.* (quotations and citation omitted).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

Against that backdrop, the Court turns to the matter at hand.  Each Plaintiff asserts two counts of defamation against SPLC.  In Counts I and II, DIS alleges that SPLC defamed it by calling it a "hate group" and an "anti-immigrant hate group." (Doc. 3, paras. 26–35). In Counts III and IV, King alleges that he was defamed when the Defendant claimed that he leads an "anti-immigrant hate group" that focuses on vilifying all immigrants. (*Id.*,

5

paras. 36–45). To right these alleged wrongs, the Plaintiffs seek compensatory and punitive damages, as well as permanent injunctive relief.

To state a claim for defamation under Georgia law, the Plaintiffs must establish "(1) a false and defamatory statement concerning the [Plaintiffs]; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga. 2002) (quotations and citation omitted).[4] However, "[w]hen applying state defamation law to public figures, the First Amendment imposes additional limitations." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021) (footnote omitted). Because the Plaintiffs concede they are public figures, the First Amendment requires that they demonstrate that (1) the challenged statements are "sufficiently factual to be susceptible of being proved true or false," *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990); (2) the statements are false, *id.* at 16; and (3) that SPLC made the statements with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). To demonstrate that the statements were made with actual malice, the Plaintiffs must plead sufficient factual allegations "to give rise to a

---

[4] In its brief in support of its motion to dismiss, SPLC argues that Georgia law applies to this suit. It is not entirely clear whether the Plaintiffs agree. In their complaint, they allege that they demanded a retraction of SPLC's "hate group" designation "pursuant to Code of *Alabama* 6-5-186." (Doc. 3, para. 23 (emphasis added)). They also appear to seek punitive damages consistent with that provision in Count V. However, in their response to SPLC's motion, they argue that *Georgia* law does not provide to SPLC the protection it asserts, but they do not otherwise address which state's law applies. But any distinction between Alabama or Georgia state law does not matter here. Because the Court finds that the Plaintiffs' claims fail for *constitutional* reasons separate from any analysis under either state's law, the result would be the same no matter which applied. For simplicity, and because the parties argued over the protections offered by Georgia law, the Court assumes without deciding that Georgia law applies, but the Court does not otherwise address the parties' state law arguments.

reasonable inference the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (quoting *Sullivan*, 376 U.S. at 280). The test is *subjective*: the Court "ask[s] whether the defendant, instead of acting in good faith, *actually entertained* serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* (emphasis added) (citations omitted).

SPLC argues that if its designation of DIS[5] as a "hate group" is both susceptible to proof as false, as well as actually false, the Plaintiffs have nevertheless failed to allege facts sufficient to give a reasonable inference that it made the designation with actual malice.[6] The Plaintiffs disagree. They argue that information available to SPLC (including that King has an adoptive sister who is an immigrant and that DIS has a diverse board, some of whom are themselves immigrants) demonstrates that DIS is *not* anti-immigrant as defined by the SPLC. They also argue that the complaint clearly alleges a nexus between the timing of the hate group designation and DIS's actions lobbying for immigration enforcement bills in Georgia, and that it had previously chosen *not* to classify DIS as a hate group (anti-immigrant or otherwise) in the past. These contentions, according to the Plaintiffs,

---

[5] SPLC contends that King's claims should be dismissed because its statements about DIS are not "of and concerning him" as an individual. However, because the Court finds that the Plaintiffs fail to adequately plead actual malice, and so are due to be dismissed on those grounds, it does not reach the separate issue of whether the statements sufficiently comment on King to be actionable by him.

[6] SPLC also argues that whether DIS is a "hate group" is a subjective, political opinion not susceptible to proof as false. However, "[t]here is a fair debate about whether the term hate group is definable in such a way that it is provable as false[, a debate] complicated in this case by the fact that SPLC put its own definition of the term on its website." *Coral Ridge*, 6 F.4th at 1252 n.7. Because the Court finds that regardless of whether the allegedly defamatory statements are subject to factual verification, the Plaintiffs nevertheless fail to adequately plead actual malice—thus, the Court does not address whether the statements are susceptible to *proof* as false, or whether they are *actually* false.

demonstrate that SPLC "maliciously issued these defamatory statements as part of a lobbying strategy to disable what they assessed to be their most formidable adversaries." (Doc. 14 at 25).

To start, the Court "can disregard the portions of the complaint where [the Plaintiffs] alleged in a purely conclusory manner that [SPLC] acted" with malice. *Coral Ridge*, 6 F.4th at 1252. These are "[t]hreadbare recitals of the elements of" defamation, "supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, and are thus insufficient to state a claim. The Court is also unconcerned with whether SPLC "maliciously issued" its designation to thwart DIS's ability to lobby for legislation. "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (footnote and citations omitted). It does not matter whether SPLC "had evil intent or a motive arising from ill will;" it only matters "whether [SPLC] subjectively doubt[ed] the truth of the publication." *Coral Ridge*, 6 F.4th at 1253 n.8 (citation omitted). And so, the Court must decide only whether the Plaintiffs plausibly allege enough to demonstrate a reasonable likelihood that SPLC *knew or suspected* that its designation was false.

They do not. First, the Plaintiffs' contention that SPLC *affirmatively* declined to label DIS a hate group (rather than, say, neglected to do so) is not in the complaint. The complaint only states that SPLC "had not labeled" DIS a hate group "as late as October, 2017[,]" but otherwise does not ascribe to SPLC any affirmative choice in declining to do so. (Doc. 3, para. 14). But even if the Plaintiffs *had* alleged that SPLC had previously

8

declined to name DIS a hate group and then reversed itself, the Plaintiffs do not make clear why that, in and of itself, would add up to actual malice. The Plaintiffs do not point to anything that otherwise restricts SPLC from changing its mind or reweighing its own criteria.[7] Even if SPLC declined to name DIS a hate group in the past, the decision to do so now does not speak to whether SPLC knew or suspected that the designation was false.

Further, while DIS's board may be composed of immigrants as Plaintiffs allege, the Plaintiffs do not allege that SPLC *knew* that fact. Instead, the Plaintiffs appear to take umbrage with the fact that the SPLC did not check the composition of DIS's board before it published its designation.[8] But "a failure to investigate, standing on its own, does not indicate the presence of actual malice." *Michel*, 816 F.3d at 703 (citing *Harte-Hanks*, 491 U.S. at 692). Instead, "there must be some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth." *Id.* (citations omitted). The Plaintiffs here make no such showing.

The Plaintiffs also allege in their complaint that SPLC took King's statements out of context and imputed the statements of others to him. But it does not include any facts beyond that conclusory assertion—it is silent as to *which* statements are out of context or

---

[7] Especially considering that SPLC identifies hate groups using its *own definition*, which, surely, it is free to change.

[8] The Plaintiffs also argue that because King has an adoptive, immigrant sister, he and DIS cannot therefore hate all immigrants, and so SPLC defamed them by saying they did. Such a fact is not alleged in the complaint, nor is any indication that SPLC knew that fact or made that resulting inference. It cannot, therefore, support a conclusion that SPLC subjectively knew its anti-immigrant hate group designation was false.

9

were spoken by others, and whether SPLC *knew* that fact.  Such a conclusion without any attendant support is insufficient to sustain a cause of action.

In their brief (but not in their complaint), the Plaintiffs assert that "there is no evidence that Plaintiff King or Plaintiff DIS has beliefs or practices that involve attacking or maligning all immigrants." (Doc. 14 at 26).  Maybe so.  But even if true, and even had if such an assertion had been in the complaint, it does little to resuscitate the Plaintiffs' claims.  There remains no assertion that SPLC *knew* that such evidence is lacking.

All told, the Plaintiffs plead no fact that would allow the Court "to infer that SPLC seriously doubted the accuracy of designating [DIS] a hate group." *Coral Ridge*, 6 F.4th at 1253.  The Plaintiffs' barebones complaint asks the Court to ignore the protections of the First Amendment and to read actual malice into the pleadings where none has plausibly been alleged.  The Court declines to do so.  As such, the Plaintiffs' cause of action for defamation (as well as their requests for punitive damages and injunctive relief) cannot be sustained and are due to be dismissed.  However, because "[a] dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice and the [Plaintiffs] should have the opportunity to amend [their] complaint . . . ." *Michel*, 816 F.3d at 706, the dismissal will be without prejudice.[9]

---

[9] In *Coral Ridge*, the district court dismissed a near-identical claim of defamation against SPLC *with* prejudice because it found that the SPLC's hate group designation was unactionable opinion. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1280 (M.D. Ala. 2019).  It found in the alternative that if the designation *was* an actionable statement susceptible to proof as false, the plaintiff nevertheless failed to adequately plead actual malice. *Id.*  On appeal, the Eleventh Circuit affirmed based on that alternative finding, *Coral Ridge*, 6 F.4th at 1252–53, but did not address whether that meant the dismissal of the defamation claim remained with prejudice or not, or whether, if it remained a dismissal with prejudice, the statement in *Michel* that such dismissals should be *without* prejudice remained good law.  To the extent that *Coral Ridge* and *Michel* are inconsistent, the Court follows the rule of the earlier

## V. CONCLUSION

Thus, the Plaintiffs have failed to state a claim for which relief may be granted. Accordingly, it is

ORDERED that the Defendants' motion to dismiss (doc. 10) is GRANTED without prejudice.

A separate final judgment will be entered.

DONE this 29th day of March, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

case, *Michel*, in finding that the dismissal should be without prejudice. *See Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) (explaining the "earliest case" rule).